IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GOAL ACQUISITIONS CORP. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-1549-DII |
| | § | |
| DIGITAL VIRGO, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff Goal Acquisition Corp.'s ("Goal") Motion for Preliminary Injunction, (Dkt. 12). Also before the Court is Defendant Digital Virgo's ("DV") Motion to Dismiss, (Dkt. 25). Having considered the briefing, the evidence, and the relevant law, the Court will deny the motion for a preliminary injunction and dismiss the case.

**I. BACKGROUND**

DV is a French mobile payments processor. (Am. Compl., Dkt. 11, at 2). Goal is a special purpose acquisition company ("SPAC") incorporated in Delaware. (*Id.*). In late 2022, Goal and DV began discussing potential business combinations to take DV public in the United States. (*Id.*). In November 2022, the two parties signed a Non-Disclosure Agreement ("NDA") that obligated DV not to use any confidential information from Goal other than to evaluate the SPAC's proposed transaction. (*Id.*). The NDA also provided that disputes would be governed by Delaware law and resolved through binding JAMS arbitration in Austin, Texas. (NDA, Dkt. 13-1, at 13). The NDA further allowed parties to seek interim, provisional, or emergency relief "in aid of arbitration," either from the arbitrator or a federal court. (*Id.*). Under the NDA, DV "agree[d] to the granting of injunctive relief in [Goal's] favor without proof of actual damages, proving the inadequacy of money damages, [or] proving the likelihood of success . . . ." (*Id.* at 12).

1

Shortly after signing the NDA, the parties entered into a Business Combination Agreement, followed in February 2023 by an Amended Business Combination Agreement ("ABCA"). (*Id.*). The parties aimed to close their deal by June 2023, (Am. Compl., Dkt. 11, at 2), and Goal claims that it shared many details of its proprietary business strategies with DV in the lead up to DV's expected public offering. (*Id.* at 2–3).

The parties dispute what happened next. DV claims that Goal failed to satisfy its closing obligations, (Mot. Dismiss, Dkt. 25, at 12), while Goal claims that DV refused to close, (Am. Compl., Dkt. 11, at 3). A series of lawsuits and arbitrations followed. Goal filed a request for arbitration with the ICC for violations of the ABCA in September 2023, a complaint in the Delaware Court of Chancery seeking interim relief to aid the ICC arbitration three weeks later, a JAMS arbitration in Austin for violations of the NDA in December 2023, and finally, this lawsuit seeking interim relief in aid of the JAMS arbitration the same month. (Mot. Dismiss, Dkt. 25, at 13–15).

The Amended Complaint alleges that DV is misappropriating confidential information provided by Goal and seeks injunctive relief to halt DV's ongoing use of the information. (Am. Compl., Dkt. 11, at 3; Mot. Prelim. Inj., Dkt. 12, at 11–12). Goal asserts only one cause of action: "a preliminary injunction." (Am. Compl., Dkt. 11, at 3). In response, DV argues that the NDA was superseded by the ABCA and therefore cannot provide the Court with personal jurisdiction or a valid cause of action. (Mot. Dismiss, Dkt. 25, at 16). DV also contends that Goal has failed to show irreparable harm, and therefore fails on the sole claim that can be brought outside of arbitration. (*Id.* at 18–19).

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

### B. Motion to Dismiss

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

The NDA provides that the parties may seek "provisional remedies" in federal court. (NDA, Dkt. 13-1, at 13). Beyond that, however, disputes between the parties must be sent to arbitration. (*Id.*). The decision whether to grant a preliminary injunction is therefore dispositive of this entire lawsuit, as denial of a preliminary injunction would leave the Court with no remaining justiciable questions. Finding that Goal has failed to carry its burden on irreparable harm or the balance of equities, the Court will deny Goal's motion for a preliminary injunction and dismiss the case.

**A. Irreparable Harm**

The party seeking a preliminary injunction must prove that irreparable harm is likely, not merely possible. *Winter*, 555 U.S. at 22. In the Fifth Circuit, irreparable harm exists "where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010). In this case, Goal's harms all relate to lost profits or revenues, which are compensable via money damages. Therefore, Goal must show some other reason why monetary damages could not rectify its alleged injury.

In response, Goal makes two arguments. First, it contends that the damages related to any breach of the NDA will be difficult to calculate and "inherently involve speculation." (Mot. Prelim. Inj., Dkt. 12, at 10–11). However, mere uncertainty of a party's total money damages does not demonstrate irreparable harm. Instead, the money damages must be "especially difficult to compute." *Hains v. Pointe Coupee Par. Gov't*, No. CV 22-835-SDD-RLB, 2023 WL 7324077, at *3 (M.D. La. Nov. 7, 2023) (internal quotations omitted); *see also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989) (noting same). Goal has not shown why money damages would be especially difficult to compute here. Nor does the breach of an NDA automatically lead to irreparable harm—Fifth Circuit cases affirm there is no per se rule that breaches of NDA lead to irreparable harm. *See ZeniMax Media Inc. v. Oculus VR LLC*, No. 3:14-CV-1849-K, 2018 WL 4078586, at *2 (N.D. Tex. June 27, 2018) (citing *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008)).[1] Goal's lost profits from the breach of the NDA may involve some degree of

---

[1] Often, breaches of NDAs may lead to irreparable harm because disclosure of confidential information cannot be undone. This case, however, is not a standard breach of a restrictive covenant or NDA. Rather, the information here relates to business strategies related to a public offering in the United States. Goal—an SPAC with no apparent operations—will not suffer the same sort of irreparable losses of its confidential information if DV uses its strategies to go public. Goal may lose profits from the public offering, but it is unclear how it will suffer other harms from any unauthorized disclosures given that the company lacks real operations. In other words, this is not a case where one employee leaves to a rival company and risks sharing his old employer's secrets. This is a case where the information has already been shared and Goal's harm is that it will not earn its expected profits from that information's use. Goal's harm is more akin to unpaid

5

estimation, but the lack of complete certainty as to damages does not render them an inadequate remedy.

Second, Goal argues that the NDA itself stipulates to a finding of irreparable harm. (Mot. Prelim. Inj., Dkt. 12, at 10–11). In the NDA, DV agreed "that remedies at law would be inadequate to protect [Goal] against any actual and threatened breach of the agreement." (NDA, Dkt. 13-1, at 12). DV also "agree[d] to the granting of injunctive relief in [Goal]'s favor without proof of actual damages, proving the inadequacy of money damages, proving the likelihood of success . . . ." (*Id.*).

However, absent any other genuine showing of irreparable harm, the NDA's stipulation is insufficient to meet Goal's burden. Under both Delaware and Fifth Circuit caselaw,[2] stipulations to irreparable harm do not automatically compel an injunction on that prong. Although the Fifth Circuit itself has not addressed the issue, several district courts have held that stipulations to irreparable harm alone cannot sustain a finding of actual irreparability. *See Lockheed Martin Corp. v. Howmet Aerospace Inc.*, 2023 WL 9503470, at *3 (N.D. Tex. Dec. 29, 2023) ("Even when a contract provision . . . expressly stipulates to irreparable harm for certain breaches and authorizes injunctive

---

consulting fees than to a standard NDA breach, and for that reason, it has failed to show true irreparable harm or a favorable balance of equities.

[2] The parties' briefing entirely skips over the latent *Erie* question. Here, the Court sits in diversity jurisdiction for a contract governed by Delaware law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). It must therefore apply Delaware law to the breach of contract claims but federal law as to the procedural questions. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965). Goal appears to assume that Delaware law applies, (Mot. Prelim. Inj., Dkt. 12, at 10–11), while DV cites both Delaware and Fifth Circuit caselaw, (Resp., Dkt. 28, at 23–26). Ultimately, the Court is not convinced that Delaware law applies as to the stipulation of irreparable harm. Even if the likelihood of success depends on state law, the remaining elements speak to the principles underlying awards of equitable relief in federal court. *See* Fed. R. Civ. P. 65(b)(1)(A) (authorizing issuance of temporary restraining orders where facts in complaint show immediate and irreparable injury); *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1296–98 (11th Cir. 2022) (Pryor, J., concurring). *But see Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329 (5th Cir. 2013) (noting, in an unpublished opinion, that state law should apply as to substantive showing of irreparable harm). In particular, the Court is skeptical because this case involves stipulations to entry of an injunction. Federal law does not recognize such stipulations as automatic, but state law feasibly could. Applying state law would then enlarge the federal court's equitable powers. *See Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923) ("That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear.") (Brandeis, J.). Accordingly, the Court will apply Fifth Circuit caselaw to the inquiry. Ultimately, the *Erie* question is not outcome determinative in this case because Delaware and Fifth Circuit caselaw largely align on the question of stipulations to irreparable harm.

relief as the remedy—a court must still perform a standard inquiry into the existence of irreparable injury because such clauses are insufficient by themselves to support a finding of irreparable harm."); *Dickey's Barbecue Rests., Inc. v. GEM Inv. Grp.*, No. 3:11-cv-2804-L, 2012 WL 1344352, at *4 (N.D. Tex. Apr. 18, 2012) ("Other courts have found that [c]ontractual stipulations of irreparable harm, however, are insufficient by themselves to support a finding of irreparable harm to support injunctive relief.") (cleaned up); *Traders Int'l, Ltd. v. Scheuermann*, No. CIV.A. H-06-1632, 2006 WL 2521336, at *8 (S.D. Tex. Aug. 30, 2006) (same); *Hartford Fire Ins. Co. v. 3i Construction, LLC*, No. 3:16-cv-00992-M, 2017 WL 3209522, at *2 (N.D. Tex. May 18, 2017) ("Courts have, therefore, sometimes rejected the contention that a contractual agreement alone justifies the imposition of a preliminary injunction.").[3]

      This Court finds no reason to differ from these other district courts' approach. Preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter*, 555 U.S. at 24. Consistent with *Winter*, parties cannot stipulate to the entry of an injunction as a matter of law. To hold otherwise would divest federal courts of any discretion to deny an injunction where there is no true irreparable harm and effectively award injunctions as a matter of right. The parties' stipulation clause may be evidence of their anticipated irreparable harm, but that contractual stipulation cannot compel a discretionary decision. Indeed, the NDA here stipulates not only to irreparable harm, but

---

[3] Delaware law takes a more favorable view towards contractual stipulations of harm. *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 56 A.3d 1072, 1145 (Del. Ch.), *aff'd*, 45 A.3d 148 (Del. 2012), *aff'd*, 68 A.3d 1208 (Del. 2012) ("In Delaware, parties can agree contractually on the existence of requisite elements of a compulsory remedy, such as the existence of irreparable harm in the event of a party's breach, and . . . this court has held that such a stipulation is typically sufficient to demonstrate irreparable harm."). However, it still grants courts discretion to authorize injunctions. *See AM Gen. Holdings v. The Renco Grp.*, 2016 WL 787929, at *2 (Del. Ch. Feb. 19, 2016) ("[A] contractual stipulation . . . cannot limit this Court's discretion to decline to order injunctive relief" because "a contract cannot manipulate in the future the Court's discretion."); *Kansas City S. v. Grupo TMM, S.A.*, No. CIV.A. 20518-NC, 2003 WL 22659332, at *2 (Del. Ch. Nov. 4, 2003) ("Although a contractual stipulation as to the irreparable nature of the harm that would result from a breach cannot limit this Court's discretion to decline to order injunctive relief, such a stipulation does allow the Court to make a finding of irreparable harm provided the agreement containing the stipulation is otherwise enforceable. If the facts plainly do not warrant a finding of irreparable harm, this Court is not required to ignore those facts . . . .").

also to "the likelihood of success" of its case. (NDA, Dkt. 13-1, at 12). Treating stipulations of both likelihood of success and irreparable harm as binding would nullify the two most important prongs of an extraordinary, discretionary equitable remedy, and potentially lead to granting injunctions as a matter of course.

### B. Balance of Equities

Goal has also not shown that the balance of equities tips in its favor. The NDA does not mention the balance of equities. Nothing in the NDA stipulates to the balance of equities leaning in Goal's favor. As described in the parties' briefing, the equities lie against granting an injunction. If the Court declines an injunction, Goal may still recover damages in arbitration.[4] Nothing about Goal's damages suggest that it will incur harm that cannot be compensated through monetary awards. DV, meanwhile, will suffer serious harm if it is preliminarily enjoined. Namely, Goal seeks an injunction preventing DV from "[u]tilizing the confidential business models . . . disclosed to DV under the NDA [and e]ntering into any contract or business relationship with the contacts disclosed to DV under the NDA . . . ." (Mot. Prelim. Inj., Dkt. 12, at 12–13). That injunction is sweeping and would be nearly impossible to monitor or enforce. The preliminary injunction would risk significant compliance costs and could potentially hamstring DV's business operations, leading to significant unrecoverable damages. Because DV's costs of complying with an injunction would far outweigh Goal's benefit from obtaining an injunction, the balance of equities leans in DV's favor.[5]

### C. Remaining Requests for Relief

Last, Goal seeks an injunction ordering DV to "[i]dentify all persons to whom it was introduced by Goal and with whom it has communicated from July 5, 2023 to the present [and

---

[4] Goal repeatedly argues that disclosure of confidential information is irreparable. (Reply, Dkt. 30, at 6–7). That is not the case here, however, where Goal's confidential information consists of business strategies and contacts developed for and on behalf of DV.
[5] The public interest factor does not favor either side.

8

p]roduce all records of such communications . . . ." (Mot. Prelim. Inj., Dkt. 12, at 13). Here, the Court finds that this request is best left to the JAMS arbitration panel. While the NDA allows the parties to seek provisional relief in federal court, the NDA also allows the arbitrator to issue such relief. And the parties' NDA authorizes "provisional remedies" only "in aid of arbitration." (NDA, Dkt. 13-1, at 13). The JAMS arbitration panel is already tasked with adjudicating the parties' dispute and therefore is far better suited to determine whether provisional document production is warranted. Even as this Court denies Goal's request, Goal may make the same motion in the pending JAMS arbitration. Accordingly, Goal has not shown that it will suffer irreparable harm if the Court denies this request nor that the balance of equities leans in its favor.

In sum, Goal has failed to demonstrate irreparable harm or that the balance of equities warrants an injunction. Its request for a preliminary injunction is therefore denied. As all other claims must be submitted to arbitration, the Court will dismiss this action without prejudice.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Goal's motion for a preliminary injunction, (Dkt. 12), is **DENIED**. DV's motion to dismiss, (Dkt. 25), is **GRANTED** without prejudice for the reasons set forth in this order.

The motions for leave to file sealed documents, (Dkts. 13, 27, 29), are **GRANTED**. The Clerk of the Court shall file the attached sealed documents, (Dkt. 13-1, Dkt. 27-1, and Dkt. 29-1 to 29-3).

The Court will enter final judgment via separate order.

**SIGNED** on March 12, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE